**Aragie WOLDE–MESKEL, Plaintiff–Appellant–Cross–Appellee,**

v.

**VOCATIONAL INSTRUCTION PROJECT COMMUNITY SERVICES, INC., Estate of Robert Banome, Deceased, and Sudhir Patel, Defendants–Appellees,**

**Vocational Instruction Project Community Services, Inc., and Sudhir Patel, Defendants–Appellees–Cross–Appellants.**

**Docket Nos. 97–7181, 97–7219.**

United States Court of Appeals, Second Circuit.

Argued March 18, 1998.

Decided Jan. 22, 1999.

Werner L. Loeb, New York, NY (Aragie Wolde–Meskel, pro se, South Orange, NJ, on the brief), for Plaintiff–Appellant–Cross–Appellee.

Robert S. Nayberg, Carle Place, NY (Law Offices of Martin H. Scher, Carle Place, NY, on the brief), for Defendants–Appellees, Defendants–Appellees–Cross–Appellants.

Before: JACOBS, LEVAL, and GIBSON, Circuit Judges.*

JACOBS, Circuit Judge:

Plaintiff-appellant Aragie Wolde–Meskel, *pro se,* brought this federal diversity action asserting a variety of employment-related claims against his former employer, Vocational Instruction Project Community Services, Inc. ("VIPCS"), and several individual defendants.[1] Wolde–Meskel's claims—(1) an unquantified amount for back pay and emotional/punitive damages; (2) $8,250 for deficient contributions to his annuity plan; (3) $1,923.08 in severance pay; and (4) $1,538.40 in vacation pay—arose from an alleged wrongful termination in breach of an implied employment contract. The complaint alleged, and the district court concluded, that these claims—when aggregated—satisfied the then-applicable $50,000 amount in controversy requirement for federal diversity jurisdiction.[2] *See* 28 U.S.C. § 1332(a). VIPCS counterclaimed for conversion, alleging $3,150 in damages—an amount Wolde–Meskel allegedly stole from VIPCS in the course of issuing payroll checks.[3] On a motion for summary judgment, the district court dismissed the wrongful termination claim, then tallied the amount in controversy for the remaining claims ($8,250 + $1,923.08 + $1,538.40 = $11,711.48), and held that, because the jurisdictional amount was not satisfied, the court lacked jurisdiction to hear the remaining claims. *See Wolde–Meskel v. Vocational Instruction Project Community Servs., Inc.,* 950 F.Supp. 101, 105 (S.D.N.Y. 1997).

Wolde–Meskel appeals the district court's grant of summary judgment on the wrongful termination claim. VIPCS and controller Patel cross-appeal to contest the dismissal of all the remaining claims.

We affirm the district court's grant of summary judgment on the wrongful termination claim for substantially the reasons set forth in the district court opinion. *See Wolde–Meskel,* 950 F.Supp. at 103–04. We reverse the dismissal of the remaining claims.

## DISCUSSION

The district court held that "[i]n a case premised solely on diversity jurisdiction, if one claim is dismissed, the district court may, in its discretion, dismiss the remaining claims if they fail to meet the threshold amount in controversy." *Wolde–Meskel,* 950 F.Supp. at 104. In support of its view, the district court cited a Fourth Circuit opinion, which treated left-over diversity claims as dismissible under the doctrine of supplemental jurisdiction— *Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995)—and a district court opinion from this circuit—*Keles v. Yale Univ.,* 889 F.Supp. 729, 735 (S.D.N.Y.1995), *aff'd,* 101 F.3d 108 (2d Cir.1996). We conclude that (A) the district court's original basis for jurisdiction was unimpaired by the dismissal of less than all of the joined claims, and (B) the doctrine of supplemental jurisdiction is inapplicable.

### A. Original Basis for Jurisdiction

At the outset, the district court had jurisdiction in diversity over Wolde–Meskel's complaint as a whole:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest

---

* The Honorable John R. Gibson, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Wolde–Meskel's complaint named VIPCS's Vice President of Finance, Louis Prizzigoni; executive director, Father Robert Banome; and controller, Sudhir Patel as defendants. Prizzigoni was dismissed as a defendant because of a lack of diverse citizenship. Banome died in 1994, and subsequently Wolde–Meskel was granted leave to serve the Estate of Robert Banome. Patel remains a defendant.

2. The amount in controversy requirement has since been raised to $75,000. *See* Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205, 110 Stat. 3847, 3850 (1996) (amending 28 U.S.C. § 1332(a)-(b)).

3. The status of VIPCS's counterclaim, which was compulsory under Fed.R.Civ.P. 13(a), depends in part on the status of Wolde–Meskel's claims. *See* 28 U.S.C. § 1367(c)(3); *see also Scott v. Long Island Sav. Bank,* 937 F.2d 738, 743 (2d Cir. 1991). Because we reverse and hold that the district court has mandatory jurisdiction over Wolde–Meskel's remaining claims, the district court has jurisdiction over VIPCS's compulsory counterclaim.

and costs, and is between—(1) citizens of different States; ...

28 U.S.C. § 1332(a). Since the diversity statute confers jurisdiction over "civil actions" rather than specific claims alleged in a complaint, a plaintiff is permitted to aggregate claims in order to satisfy the amount in controversy requirement. *See Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969) (aggregation is permitted in cases in which a single plaintiff seeks to aggregate two or more claims against a single defendant). Aggregation is governed by Fed.R.Civ.P. 18, which allows joinder of any claims against a single defendant. Rule 18(a) provides that:

> A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

There is no requirement that the aggregated claims (between parties) be factually related; claims joined under Rule 18 need not be part of the same case or controversy as claims over which the court would have independent original jurisdiction. *See* 14B Charles Alan Wright *et al., Federal Practice and Procedure* § 3704, at 130 (3d ed. 1998) ("In the case of a single plaintiff suing a single defendant, [Rule 18] permits a litigant to join as many claims as he or she may have against an opponent regardless of the nature or relationship of those claims. When that single plaintiff joins several claims against the defendant, the general rule ... is that the value of all the claims can be added together—aggregated—in determining whether the requisite jurisdictional amount in controversy has been satisfied." (footnote omitted)). Thus all of Wolde–Meskel's aggregated initial claims were within the ambit of § 1332,

and within the jurisdiction of the district court.[4]

### B. Jurisdiction After Summary Judgment

██ Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the "time-of-filing" rule. "Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938). Thus it is "the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile or the amount recovered falls short of [the statutory minimum]." *Rosado v. Wyman*, 397 U.S. 397, 405 n. 6, 90 S.Ct. 1207, 1214 n. 6, 25 L.Ed.2d 442 (1970). Federal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset. *See Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir.1996) ("The amount in controversy is determined at the time the action is commenced." (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994))); *see also Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir.1998) (noting that the time-of-filing rule applies in the citizenship context).[5]

In *Chase Manhattan Bank*, the plaintiff bank invoked diversity jurisdiction to enforce a mortgage guaranty, alleging that $4 million in improvements would be required post-foreclosure. Shortly after suit was filed, the bank foreclosed and sold the property unimproved. The district court dismissed for lack

---

4. Some commentators suggest that the current system, which creates original jurisdiction over aggregated claims that would not independently be triable in federal court, is nonsensical. *See, e.g.,* 14B Charles Alan Wright *supra* § 3704, at 133.

5. Plaintiff in *Linardos* opposed dismissal of his diversity complaint on the ground that although he was currently a citizen of the same state as

the defendants, he was a citizen of another state at the time the complaint was filed. This Court remanded for determination of plaintiff's citizenship at the time of filing: "[i]f diversity exists at the time of commencement, federal jurisdiction is not defeated if one party subsequently becomes a citizen of the same sate as his opponent." *See Linardos*, 157 F.3d at 947 (internal quotation omitted).

of jurisdiction on the ground that the remaining amount in controversy fell short of the amount required to support diversity jurisdiction. We reinstated the complaint on the ground that it alleged in good faith a sufficient amount in controversy notwithstanding subsequent events that made recovery of that amount legally impossible. *Chase Manhattan Bank*, 93 F.3d at 1070–71. The district court had "confused the jurisdictional inquiry with the ultimate issue of recovery." *Chase Manhattan Bank*, 93 F.3d at 1071.

 Wolde–Meskel's complaint alleged an implied employment contract and contract claims aggregating over $50,000 in damages. This Court recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy. *See Tongkook*, 14 F.3d at 785–86 ("If the right of recovery is uncertain, the doubt should be resolved ... in favor of the subjective good faith of the plaintiff." (quoting *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir.1957))). Moreover, there has been no argument presented or finding made that the jurisdictional allegations of the complaint were made in bad faith in an attempt to feign jurisdiction. In any event, to demonstrate a filing in bad faith, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul*, 303 U.S. at 289, 58 S.Ct. at 590. Legal certainty is analyzed by what appears on the face of the complaint; subsequent events—such as a valid defense offered by the defendant,[6] or actual recovery in an amount less than the minimum jurisdictional amount—"do[ ] not show [plaintiff's] bad faith or oust the jurisdiction." *St. Paul*, 303 U.S. at 289, 58 S.Ct. at 590.

Not to the contrary is *Tongkook* in which plaintiff alleged over $100,000 in contract damages, but discovery revealed a letter of credit drawn on by plaintiff prior to the suit that reduced the disputed amount below the jurisdictional amount needed to support diversity jurisdiction. We affirmed the district court's dismissal, noting that "when the suit was commenced, the balance due was actually" below the requisite amount. *Tongkook*, 14 F.3d at 783. Rejecting the argument that a plaintiff's subjective belief as to the amount in controversy at the time the complaint is filed is sufficient to create good faith, we relied on the fact that "from the outset, [plaintiff], to a 'legal certainty,' could not recover the statutory jurisdictional amount." *Tongkook*, 14 F.3d at 785.

Wolde–Meskel's breach of contract claim was defeated by the legal defenses adduced by VIPCS, and by Wolde–Meskel's inability to prove that the totality of the circumstances created an implied employment contract. Summary judgment on Wolde–Meskel's breach of contract claim was therefore appropriate. But while that ruling reduced the amount in controversy, it did not establish the quite distinct proposition that the amount claimed was never in controversy. We cannot conclude that the face of Wolde–Meskel's complaint was so patently deficient as to reflect to a legal certainty that he could not recover the amount alleged, or that the damages alleged were feigned to satisfy jurisdictional minimums.

### C. Other Courts

We are following what is arguably a majority rule. As we read the cases, the Fourth Circuit and the District of Columbia Circuit are the only circuits to hold explicitly that a diversity case may be dismissed altogether for lack of jurisdiction once the dismissal of individual aggregated claims reduce the possible recovery below the statutory amount. *See Shanaghan v. Cahill*, 58 F.3d 106, 109–10 (4th Cir.1995); *Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C.Cir.1998) (applying supplemental jurisdiction to dismiss a $25,000 claim against defendant after $550,000 claim was dismissed on summary judgment). Several circuits have specifically applied the *St. Paul* time-of-filing test in that circumstance, or disapproved of the alternate approach in *dicta*. *See Coventry Sewage Assoc. v. Dworkin Realty Co.*, 71 F.3d 1, 8 (1st Cir.1995) (hold-

---

**6.** *See Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199 (2d Cir.1982). In *Zacharia*, this Court reversed the district court's dismissal of a suit in which the amount in controversy fell below the jurisdictional minimum. The Court noted that a valid defense does not deprive a federal court of jurisdiction. *Zacharia*, 684 F.2d at 202.

ing that the district court retained jurisdiction because "the reduction of the amount in controversy resulted from acts occurring wholly after the action commenced"); *Lindsey v. M.A. Zeccola & Sons, Inc.*, 26 F.3d 1236, 1244 n. 10 (3d Cir.1994) ("Although the remaining claim is less than $50,000, the district court retains diversity jurisdiction."); *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir.1990) ("Once jurisdiction has properly attached, it cannot be ousted by subsequent events."); *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1180 (5th Cir.1987) ("[T]he court would have jurisdiction to decide a case even if the plaintiff failed to prove his federal question claim, or if the amount in controversy falls below the jurisdictional amount . . . ." (internal citations omitted)); *see also Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir.1998) ("We doubt that the [*Shanaghan*] decision comports with the diversity statute and the cases that interpret it to permit aggregation of claims.").

In dismissing Wolde–Meskel's complaint, the district court relied on its discretion to dismiss claims over which the court has asserted supplemental jurisdiction, a jurisdictional basis that is subject to review and reconsideration at any time during the course of the case. *See Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir.1994) ("[T]he issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966))). The district court cited two opinions in support of its decision. *See Keles v. Yale Univ.*, 889 F.Supp. 729, 735 (S.D.N.Y.1995), *aff'd*, 101 F.3d 108 (2d Cir.1996); *Shanaghan v. Cahill*, 58 F.3d 106, 109–10 (4th Cir.1995). *Keles* is distinguishable; we disagree with *Shanaghan*.

### 1. *Keles v. Yale University*

In *Keles*, plaintiff claimed the university (1) fraudulently induced him to become its employee by promising him admission to its graduate program; (2) breached an implicit educational agreement by refusing admission; and (3) owed him $13,500 for failing to pay his stipend. The district court granted summary judgment on the first two claims, imposed Rule 11 sanctions because these claims had "absolutely no chance of success," and then dismissed the remaining $13,500 claim on the ground that, to a legal certainty, the complaint did not allege an amount in controversy in excess of the statutory minimum. *Keles*, 889 F.Supp. at 733–36. *Keles* does not stand for the proposition that once the amount in controversy falls below the jurisdictional minimum, the district court may in its discretion dismiss the remaining diversity claims. *Keles* applied the legal certainty test announced in *St. Paul. Keles*, 889 F.Supp. at 735. As the ruling on sanctions illustrates, the complaint never contained a good faith allegation sufficient to support diversity.

### 2. *Shanaghan v. Cahill*

In our view, the second case cited by the district court misapplies supplemental jurisdiction to cover multiple state law claims aggregated to form original jurisdiction. In *Shanaghan*, plaintiff alleged breach of contract on three loans that satisfied the amount in controversy requirement only when aggregated. Defendants invoked the statute of frauds to defeat the largest claim on summary judgment. The Fourth Circuit held that the district court had discretion to dismiss the remaining claims because under the doctrine of *supplemental jurisdiction* "federal courts generally have discretion to retain or dismiss state law claims when the federal basis for jurisdiction drops away." *Shanaghan*, 58 F.3d at 109 (emphasis removed) (citing 28 U.S.C. § 1367 (1993)). The primary argument of the *Shanaghan* court was that the district court has discretion in all cases in which the "same basic pattern" exists—"the jurisdictional basis of the action fades away and the court is left with what would otherwise be a state law case." *Shanaghan*, 58 F.3d at 110.

We believe the *Shanaghan* court, in so doing, confused (i) state-law claims that are supplemental to claims within the court's original jurisdiction (which are covered by 28 U.S.C. § 1367 and heard at the discretion of the district court) with (ii) state-law claims that are aggregated to satisfy the amount in

controversy requirement for diversity (which are within the court's original jurisdiction).

For jurisdictional analysis of Wolde–Meskel's complaint, supplemental jurisdiction is beside the point. Section 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if—. . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This can have no bearing on aggregated claims, because (for one thing) the dismissal of an individual claim that was aggregated to create original jurisdiction, is emphatically not the dismissal of "all claims over which [the court] has original jurisdiction," so long as it can be said that the court had on the filing-date original jurisdiction over the dismissed claim and the disaggregated claims that remain. The *Shanaghan* court concluded that one or more of the aggregated claims supplied original jurisdiction and that one or more was supplemental to that claim. But aggregated claims have never been treated individually for jurisdictional purposes, and nothing in § 1367 suggests that Congress intended otherwise. When state law claims are aggregated, regardless of the amounts at issue, all of them together are "original," and none of the constituent claims are "supplemental."

The nature of a supplemental claim is that the district court lacks original jurisdiction over it, and that it is *related* to a claim over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(a) (supplemental claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Sriram v. Preferred Income Fund III Ltd. Partnership*, 22 F.3d 498, 501 (2d Cir.1994) ("Because all of the claims seek to vindicate a wrong arising out of the same course of conduct, the exercise of supplemental jurisdiction over the corresponding state claims was proper."). The nature of aggregated claims is that the district court has original jurisdiction over them by virtue of their ag-

gregation; and relatedness, of course, is not a principle of aggregation under § 1332(a).[7]

## CONCLUSION

The judgment of the district court is affirmed insofar as it dismisses the wrongful termination claim, but is otherwise vacated, and this case is remanded for further proceedings consistent with this opinion.

---

**7.** Another argument made by the *Shanaghan* court is that § 1367 implemented a congressional preference for the ability of a district court to control its docket. *Shanaghan*, 58 F.3d at 111.

However persuasive this policy argument may be, *St. Paul* controls when a plaintiff aggregates several state law claims to meet the amount in controversy requirement of § 1332(a).